IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| AMY HOOBERY, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 06-343-S-LMB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| FRANKLIN BUILDING SUPPLY CO., ) | **AND ORDER** |
| an Idaho corporation, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Currently pending before the Court are Defendant Franklin Building Supply's Motion for Summary Judgment (Docket No. 16), Motion to Strike (Docket No. 27), and Motion for Partial Summary Judgment (Docket No. 28). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Order.

I.

FACTS

**A.    Parties**

Plaintiff, Amy Hoobery ("Hoobery") filed this action against Defendant Franklin Building Supply Co. ("FBS") seeking payment of certain benefits allegedly due under a contract entitled, "Franklin Building Supply, Inc. Personalized Benefit Plan for Phil Smith" ("Smith Benefit Plan"). *Complaint*, ¶ 14, Ex. A (Docket No. 1). The named parties to the Smith Benefit Plan are Phil Smith ("Smith") and FBS. *First Lierz Declaration*, Ex. A, p. 1 (Docket No. 16-5).

**MEMORANDUM DECISION AND ORDER - 1**

Smith is Hoobery's brother.  *Thomas Affidavit*, Ex. A (December 8, 2006 Deposition of Amy Hoobery), 25:21 - 22 (Docket No. 21-2).  Hoobery alleges that she was the intended beneficiary of a Death Benefit provided for in the Smith Benefit Plan.

**B.     Smith Benefit Plan**

The Smith Benefit Plan includes a "Death Benefit" and "Retirement Benefit."  *First Lierz Declaration*, ¶ 2, Ex. A (Docket No. 16-5).  The Death Benefit states as follows:

> Provided that Employee remains employed by FBS until death, or age 65, FBS agrees that if Employee dies before attaining the age of 70 years, FBS will pay to Employee's spouse, Nancy Smith, One Hundred Fifty Thousand Dollars ($150,000) if: (a) Nancy Smith survives Employee's death by at least ninety (90) days, (b) on the day immediately preceding Employee's death, Employee was legally married to Nancy Smith, and (c) Employee has not been employed by or have a direct or indirect financial interest in any business or company which directly or indirectly competes with FBS from the date hereof until the date of death.

*Id*. at Ex. A, p.1.

The Smith Benefit Plan expressly forbids assignment: "This plan is personal to Employee and the rights and interests hereunder may not be sold, transferred, assigned, pledged or hypothecated."  *Id.* at Ex. A, p. 2.  In addition, the Smith Benefit Plan allowed modification only by mutual agreement: "During Employee's lifetime, the parties hereto, by mutual agreement, may modify, amend, or rescind this Benefit Plan without the consent of any other third party."  *Id.*

It is undisputed that FBS provided the Plan to Smith, because he "had health problems and it was difficult to provide [him] with life insurance."  *Nancy Smith Affidavit*, ¶ 4 (Docket No. 22).  However, the Smith Benefit Plan expressly preserves Smith's eligibility for group life insurance and Smith, in fact, had a separate life insurance policy through the FBS group policy

**MEMORANDUM DECISION AND ORDER - 2**

with insurer Regence Life and Health.  *First Lierz Declaration*, Ex. A, p. 1; Ex. B, p. 1 (Docket No. 16-5).

**C.     Plan Administration**

The Smith Benefit Plan is part of a package of benefits that FBS administers on behalf of its employees.  *Second Lierz Declaration*, ¶ 2 (Docket No. 38-2).  This package includes 21 additional personalized benefit plans, a fully-insured employee health plan, a fully-insured life insurance plan, and a 401(k) plan.  *Id.*

FBS employs personnel who are responsible for various administrative duties with respect to these benefits.  *Id.*  These administrative duties include maintaining files and records regarding benefits, processing claims, funding the plans and meeting reporting and disclosure obligations.  *Id.*

FBS reviewed the Smith Benefit Plan at least annually.  *Id.* at ¶ 4.  The Smith Benefit Plan was reviewed to: (1) ensure that the benefits provided under the plan were appropriate given Smith's role in the company and comparable to benefits available from competitors; (2) confirm that any amounts necessary to fund the benefits under the plan had been paid; (3) evaluate whether the benefit plan needed to be modified in any way; and (4) confirm that any claims under the plan had been properly processed and paid.  *Id.*

The Smith Benefit Plan includes a claims procedure.  In order to make a claim pursuant to the Smith Benefit Plan, "[t]he Employee or any other person claiming to be entitled to amounts pursuant to [the] Benefit Plan must submit a claim within ninety (90) days after the claim arises, setting forth all relevant facts regarding claimant's claim, in writing, to the FBS Board of Directors (the "Board")."  *First Lierz Declaration*, Ex. A, p. 2 (Docket No. 16-5).  The

**MEMORANDUM DECISION AND ORDER - 3**

FBS Board promised to issue a "written decision regarding the claim within 120 days after the claim was submitted" and this decision could be appealed to the Chairman of the Board within 30 days after the Board's decision. *Id.* at 2-3.

**D.     Processing Benefits and Claims Due Upon Smith's Death**

Phil Smith died on August 22, 2002. *Thomas Affidavit*, Ex. A (December 8, 2006 Deposition of Amy Hoobery), 25:21 - 22 (Docket No. 21-2). At the time of his death, Smith was employed by FBS, but he was no longer married to Nancy Smith. *First Lierz Declaration*, ¶ 2 (Docket No. 16-5); *Nancy Smith Affidavit*, ¶ 5 (Docket No. 22).

At some point before his death, Smith filled out an enrollment card designating his sister, Amy Hoobery, as the sole beneficiary of his group life insurance policy. *First Lierz Declaration*, ¶ 8, Ex. D (Docket No. 16-5). The enrollment card is dated November 9, 2001. *Id.*

At the time of Smith's death, the group life insurance policy was insured by Regence Life and Health Insurance Company ("Regence"). *Id.* at ¶ 10. When Smith died, FBS sent Smith's enrollment card to Regence, and Regence paid Hoobery $50,000.00, the amount due under the group life insurance policy. *Id.* at ¶ 11, Ex. E.

Hoobery did not submit to FBS a written claim for benefits due under the Smith Benefit Plan. *First Lierz Declaration*, ¶ 12 (Docket No. 16-5). In fact, Hoobery did not receive a copy of the Smith Benefit Plan until the summer of 2003. *Diddle Affidavit*, Ex. A, pp. 29-30 (Docket No. 16-2). Nonetheless, Hoobery has testified that, beginning two days following the death of her brother, she spoke with two individuals at FBS inquiring into the existence of the $150,000 Death Benefit, including Rhonda Millick ("Millick"), FBS's Chief Financial Officer. *Thomas Affidavit*, Ex. A (December 8, 2006 Deposition of Amy Hoobery), 25:1 - 29:12. Hoobery also

**MEMORANDUM DECISION AND ORDER - 4**

spoke to Millick approximately one year later upon obtaining a copy of the Smith Benefit Plan. *Id.* at 33:14 - 41:24 (Docket No. 21-2).

According to Hoobery, Millick denied the existence of the $150,000 Death Benefit under the Smith Benefit Plan. *Id.* at 26:8 - 28:12. Millick, however, testifies that Hoobery did not inquire about the Smith Benefit Plan specifically. *Millick Declaration*, ¶ 2 (Docket No. 28-3). According to Millick, Hoobery inquired about the existence of a $150,000 life insurance policy, and Millick denied that such a life insurance policy existed. *Id.*

## II.

## PROCEDURAL HISTORY

Hoobery filed a Complaint against FBS on August 29, 2006, alleging federal subject matter jurisdiction pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e). Plaintiff seeks payment of the $150,000 allegedly due under the Smith Benefit Plan and a penalty of $100 per day pursuant to 29 U.S.C. § 1132(c) for FSB's alleged failure to supply requested information. *Complaint*,¶¶ 1, 2 (Docket No. 1).

On February 27, 2007, FBS filed a Motion for Summary Judgment on Hoobery's claim for benefits, arguing that Hoobery is not entitled to benefits under the Smith Benefit Plan, because she is not a beneficiary under the Smith Benefit Plan and failed to file a timely claim pursuant to the claims procedures set forth in the Smith Benefit Plan. *Defendant's Memorandum in Support of Motion for Summary Judgment* (Docket No. 16-3). On April 16, 2007, Defendant filed a separate Motion for Partial Summary Judgment against Plaintiff's administrative penalty claim arguing that a fine would not be appropriate in this case, because Hoobery is not a

**MEMORANDUM DECISION AND ORDER - 5**

beneficiary under the Smith Benefit Plan and did not request a copy of the Smith Benefit Plan. (Docket No. 28-2).

## III.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 29 U.S.C. § 1132(e), as the Smith Benefit Plan is governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1000, *et seq.* ("ERISA").  ERISA governs any "employee benefit plan" unless the plan is specifically exempt.  29 U.S.C. § 1003(a).  The term "employee benefit plan" or "plan" is defined under the statute as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  29 U.S.C. § 1002(3).  While the statute further defines "employee welfare benefit plan" and "employee pension benefit plan," *see* 29 U.S.C. §§ 1002(1), 1002(2)(A), the statute does not provide an independent definition of the term "plan."  *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987) ("the terms 'employee benefit plan' and 'plan' are defined only tautologically in the statute").

In determining whether an employment benefit is part of an employee benefit *plan* covered by ERISA, courts look to whether the benefit creates a "need for an on-going administrative program for processing claims and paying benefits."  *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1322 (9th Cir. 1992) (quoting *Fort Halifax Packing Co.*, 482 U.S. at 12).  In making this determination, courts do not consider the policy or benefit at issue in isolation but evaluate the employee benefit program as a whole.  *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1995).

**MEMORANDUM DECISION AND ORDER - 6**

In the instant case, the Smith Benefit Plan is covered by ERISA, as it is part of a larger benefit package provided by FBS to its employees, requires on-going administrative duties, and provides a process for filing and deciding claims. *See Supplemental Memorandum of Law in Support of Defendant's Motion for Summary Judgment* (Docket No. 38); *Second Lierz Declaration* (Docket No. 38-2). The Smith Benefit Plan was one of 22 personalized benefit plans provided to key FBS personnel. *Second Lierz Declaration*, ¶ 2 (Docket No. 38-2). In addition to these personalized plans, FBS provided to its employees a fully-insured employee health plan, a fully-insured life insurance plan, and a 401(k) plan. *Id.*

Considering the benefits package together, the Smith Benefit Plan clearly constitutes an employee benefit *plan* subject to ERISA. While the one-time, contingent Death Benefit on its own may not trigger ERISA coverage, the benefits package as a whole clearly does.

## IV.

## STANDARD OF REVIEW

### A.     Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "material" if it affects the outcome of the litigation. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975). A material fact is

**MEMORANDUM DECISION AND ORDER - 7**

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn*, 523 F.2d at 464 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Accordingly, "[a] mere scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Likewise, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citing *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995)). Further, because factual disputes are to be resolved at trial, in ruling on summary judgment motions, the Court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id*. at 631.

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c). If the moving party

**MEMORANDUM DECISION AND ORDER - 8**

meets its initial burden, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl*, 703 F.2d at 393 (quoting *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

**B.     ERISA Standard of Review**

"[A] denial of benefits challenged under [29 U.S.C.A.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). However, where the plan administrator is also the claimant's employer, "the potential for a conflict of interest is one additional factor to consider in applying abuse of discretion review." *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1474 (9th Cir. 1993).

It is undisputed that an abuse of discretion standard applies to the Court's review of FBS's decision to deny Hoobery benefits under the Smith Benefit Plan. Moreover, the Smith Benefit Plan provides FBS with some discretionary authority warranting an abuse of discretion review. *See, e.g. Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan,* 46 F.3d 938, 949-50 (9th Cir. 1995) (holding that a plan requiring a written decision of denial with clear reference to the plan provisions upon which the decision is based sufficient discretion to warrant abuse of discretion review). However, because FBS is both the employer and administrator of the Smith Benefit Plan, the Court will consider this factor when applying the abuse of discretion standard.

**MEMORANDUM DECISION AND ORDER - 9**

V.

DISCUSSION

The issue of whether Hoobery is a beneficiary under the Smith Benefit Plan is dispositive of both summary judgment motions in this case. Because the Court finds that Hoobery is not a beneficiary under the Smith Benefit Plan, Hoobery is neither entitled to payment of the Death Benefit nor an administrative penalty. Furthermore, because the Court makes this decision after considering all the evidence in the record, Defendant's Motion to Strike (Docket No. 27) is moot.

**A.    The Smith Benefit Plan Requires Mutual Consent to Effectively Change the Designated Beneficiary**

Under Idaho law, the primary objective in construing a contract is to determine the intent of the parties. In order to accomplish this objective, the contract must be viewed and considered by the Court as a whole and in its entirety. *Luzar v. W. Surety Co.*, 107 Idaho 693, 697, 692 P.2d 337, 341 (1984); *Beal v. Mars Larsen Ranch Corp.*, 99 Idaho 662, 668, 586 P.2d 1378, 1384 (1978). When the contract language is clear and unambiguous, the meaning of the contract and the intent of the parties must be determined from the plain meaning of the contract's words. *Rath v. Managed Health Network, Inc.*, 123 Idaho 30, 844 P.2d 12 (1992). The contract's meaning and legal effect are questions of law to be decided by the court. *Rath*, 844 P.2d 12; *Galaxy Outdoor Adver., Inc. v. Idaho Transp. Dep't*, 109 Idaho 692, 695, 710 P.2d 602, 605 (1985).

**MEMORANDUM DECISION AND ORDER - 10**

In contrast, when a contract is ambiguous, the interpretation of the document presents a question of fact which focuses upon the intent of the parties. *Luzar*, 692 P.2d at 341. Whether a contract is ambiguous is a question of law for the court to decide. *Rath*, 840 P.2d at 12.

The unambiguous terms of the Smith Benefit Plan require mutual agreement for effective modification. The Smith Benefit Plan states, "[d]uring Employee's lifetime, the parties hereto, by mutual agreement, may modify, amend, or rescind this Benefit Plan without the consent of any other third party." *First Lierz Declaration*, ¶ 2, Ex. A (Docket No. 16-5). Thus, to be effective, any modification required mutual agreement of the parties, Smith and FBS.

Plaintiff argues that the mutual agreement requirement does not apply to the designated beneficiary. *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment*, p. 5 (Docket No. 19). This argument is contrary to the plain language of the Smith Benefit Plan. Moreover, there is no indication that the beneficiary designation should be treated any differently from the other terms of the contract. First, the Smith Benefit Plan specifically names "Nancy Smith" as the beneficiary of the $150,00.00 Death Benefit. *First Lierz Declaration*, Ex. A, p. 2 (Docket No. 16-5). There is no form or blank to fill out the designated beneficiary; rather, Nancy Smith is designated by name in the same type as the other terms of the Smith Benefit Plan. Second, there is no other means provided to change the beneficiary designation. There is no enrollment card or other form to complete in order to change the beneficiary. Thus, the only method for changing the designated beneficiary is by mutual agreement. Third, by requiring mutual agreement to change the beneficiary, the contract ensures that FBS will have the information necessary to administer efficiently the Death Benefit upon Smith's death and avoid confusion.

**MEMORANDUM DECISION AND ORDER - 11**

In light of the above, the Court finds that the unambiguous language in the Smith Benefit Plan requires mutual agreement or consent in order to effectively change the designated beneficiary. As discussed further below, there is no evidence in the record that FBS agreed to amend the Smith Benefit Plan. Rather, Plaintiff's evidence is offered to support its argument that Smith intended to change the designated beneficiary. Without evidence that FBS approved this change, Plaintiff cannot demonstrate that she is the beneficiary of the Death Benefit provided for in the Smith Benefit Plan and her claim for such benefits unfortunately must fail.

Plaintiff relies upon a hand-written enrollment card and alleged statements made by Smith to Plaintiff to support Plaintiff's claim for benefits. Defendants have argued that this evidence should be stricken from the record for a number of reasons including: (1) the Court is limited in its review to matters in the administrative record; (2) the statements allegedly made by Smith to Hoobery constitute inadmissible hearsay; and (3) the enrollment card allegedly bearing Smith's handwriting must be stricken from the record as it was included in the administrative record, constitutes hearsay, and there is no foundation set for its admissibility. *Memorandum of Law in Support of Motion to Strike Portions of Record* (Docket No. 27-2). However, assuming *arguendo* that the evidence may be considered, it is insufficient to establish that the Smith Benefit Plan was amended by mutual agreement, as it refers only to the unilateral intent of Smith.

The hand-written enrollment card upon which Plaintiff relies is a photocopy of a completed enrollment card dated November 9, 2001 with hand-written notes on the bottom. *Thomas Affidavit*, Ex. B (Defendant's Response to Plaintiff's First Set of Requests for Production), Ex. 3 (Docket No. 21-3). The enrollment card is the type FBS used at the time to

**MEMORANDUM DECISION AND ORDER - 12**

make changes to beneficiaries designated on the FBS group life insurance policy. *First Lierz Declaration*, ¶ 8, Ex. C (Docket No. 16-5). However, the hand-written notes at the bottom of the document indicate Smith's intended disposition of the $150,000 Death Benefit. *Thomas Affidavit*, Ex. B (Defendant's Response to Plaintiff's First Set of Requests for Production), Ex. 3 (Docket No. 21-3).

Plaintiff testified at her deposition that her brother had indicated as early as June 2000 that she was the intended beneficiary of the $50,000 life insurance policy. *Thomas Affidavit*, Ex. A (December 8, 2006 Deposition of Amy Hoobery), 62:18 - 64:8 (Docket No. 21-2). Therefore, Plaintiff reasons there was no need to change the beneficiary of the life insurance policy on November 9, 2001, the date on the hand-written enrollment card. *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment*, pp. 10-11 (Docket No. 19). Plaintiff emphasizes that this evidence demonstrates Smith's intent to make Hoobery the beneficiary of the $150,000 Death Benefit. *Id.*

The central problem with Plaintiff's evidence, leaving Defendant's admissibility arguments aside, is that it does not provide any support to help establish that FBS agreed or consented to Smith's alleged intent to change the beneficiary of the Death Benefit under the Smith Benefit Plan. Without this mutual agreement or consent, Smith could not effectively change the beneficiary designation.

Moreover, Defendant has provided uncontroverted evidence that FBS did not consent to a change in the designated beneficiary of the Smith Benefit Plan. This evidence includes the sworn statements that "[t]he Smith Plan was never amended or modified" and that "[t]he enrollment card submitted by Plaintiff does not exist in Franklin Building Supply's file and no

**MEMORANDUM DECISION AND ORDER - 13**

officer or director of Franklin Building Supply has ever seen that document prior to service of the Complaint." *First Lierz Declaration,* ¶¶ 4,9 (Docket No. 16-5). Without knowing Smith's intent, it would be impossible for FBS to agree to, consent to, or approve the change of beneficiary as required by the unambiguous terms of the Smith Benefit Plan. Further, even if the evidence supported a reasonable inference that Smith sent to FBS the enrollment card with handwritten notations indicating what he wanted Hoobery to do with the $150,000 Death Benefit, there is no evidence that FBS agreed to the change.

### B. Substantial Compliance

Plaintiff also relies upon the theory of substantial compliance to argue that Smith effectively amended his beneficiary designation by his unilateral acts. Assuming *arguendo* that the theory of substantial compliance applies in this context, the facts do not demonstrate that Smith substantially complied with the modification provisions of the Smith Benefit Plan.

To establish substantial compliance, Plaintiff must show that Smith: (1) intended to change the beneficiary and (2) did everything to the best of his ability to effect the change. *See IDS Life Ins. v. Groshong*, 112 Idaho 847, 849, 736 P.2d 1301, 1303 (1987). While it appears that Smith may have intended to change the beneficiary of the $150,000 Death Benefit, the record does not show that he did everything he could to effect the change. Again, even if Plaintiff could establish that Smith sent in the change of beneficiary form with handwritten notations, there is no suggestion that he did anything else to effectuate his plan. There is no evidence that Smith spoke with anyone at FBS about changing the beneficiary to Plaintiff or otherwise inquired about the process for doing so in the Smith Benefit Plan. Thus, the substantial compliance argument is unavailing.

**MEMORANDUM DECISION AND ORDER - 14**

As a matter of law, Smith did not effectively change the identified beneficiary of the Death Benefit provided in the Smith Benefit Plan either by mutual agreement or substantial compliance. Therefore, Defendant's motion for summary judgment on Plaintiff's claim for benefits under the Smith Benefit Plan is granted.

**C.   Because Hoobery is Not a Designated Beneficiary Under the Plan, FBS Had No Legal Obligation to Provide Her with Information upon Request.**

ERISA contains certain disclosure requirements, including the following: "[U]pon written request of any participant or beneficiary," the plan administrator shall "furnish a copy of the latest updated plan description, plan description . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). An administrator who does not comply with such a request within 30 days of the request may, in the court's discretion, be liable for up to $100 per day from the date of such noncompliance. 29 U.S.C. § 1132(c)(1)(B).

In order to trigger these disclosure obligations, the individual requesting information must be a participant or a beneficiary. *See* 29 U.S.C. § 1132(c)(1). The statutory definition of "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8). Because Hoobery is not a designated beneficiary under the Smith Benefit Plan, she may not rely upon ERISA's disclosure requirements in order to obtain information upon request. Therefore, Defendant's motion for summary judgment on Plaintiff's claim for an administrative penalty under 29 U.S.C. § 1132(c) for FBS's alleged failure to provide Hoobery with information regarding the Smith Benefit Plan is granted.

**MEMORANDUM DECISION AND ORDER - 15**

**D.     Motion to Strike**

Defendant's Motion to Strike (Docket No. 27) is moot. After considering all of the evidence in the record, it is clear that Plaintiff cannot establish that the Smith Benefit Plan was effectively changed by mutual agreement to designate Plaintiff as the beneficiary of the $150,000 Death Benefit even though this is what Smith most likely wanted to accomplish through his unilateral acts.

## VI.

## CONCLUSION

While it appears that Smith intended to change, and may have even believed he had succeeded in changing, the beneficiary of the Death Benefit, the bottom line is that the clear and unequivocal language of the Smith Benefit Plan requires mutual agreement of both parties to effectuate such a change. The record in this action does not establish that mutual agreement was accomplished. Unilateral intent, however well-formed in the mind of one party and even communicated to members of his family, is not sufficient to modify the Smith Benefit Plan without compliance with the condition requiring mutual agreement. Mutual agreement is a key element in Plaintiff's action and that element has not been established. As such, there is no genuine issue of material fact existing in the record and Defendant's motion for summary judgment must be granted as a matter of law.

## VII.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendant Franklin Building Supply's Motion for Summary Judgment (Docket

**MEMORANDUM DECISION AND ORDER - 16**

No.16) and Motion for Partial Summary Judgment (Docket No. 28) are GRANTED, and

2. Defendant Franklin Building Supply's Motion to Strike (Docket No. 27) is MOOT.

3. This action is DISMISSED with prejudice.



DATED: **September 7, 2007**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**